2014R00057/JHY/ADL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 15- 146 (JEI) |
| | : | |
| v. | : | Hon. |
| | : | |
| LEE GETSON | : | 18 U.S.C. § 371 |

**I N F O R M A T I O N**
(Conspiracy to Pay Kickbacks)

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

1. At all times relevant to this Information:

a. Tilton Dynamic Imaging, LLC and Positional Imaging Associates, LLC, d/b/a Ocean Upright MRI (together, "the MRI Companies") were facilities located in Northfield and Toms River, New Jersey, respectively, where magnetic resonance imaging ("MRI"), among other medical services, were performed.

b. The Medicare Program ("Medicare") was a federal program established by the Social Security Act of 1965 to assist qualified aged and disabled individuals in paying for the cost of health care. Medicare worked by reimbursing health care providers and suppliers for the costs of health care services and items at fixed rates. The Medicare program provided reimbursement only for those health care services and items that were: (i) medically necessary, (ii) ordered by a physician, and (iii) actually provided as billed. The Medicare Part B program was a federally funded supplemental insurance program that provided supplementary Medicare insurance benefits

for individuals aged sixty-five or older, and certain individuals who were disabled. The Medicare Part B program paid for various medical services for beneficiaries, including MRI services. Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

      c. The MRI Companies received Medicare funds for the MRIs performed at their facilities. A radiologist employed by the MRI Companies to review the MRI scans performed at their facilities was a Medicare participating provider. Through an arrangement disclosed to, and allowed by, Medicare, this radiologist billed Medicare for the MRI scans performed at the MRI Companies and then reassigned the Medicare funds received for those services to the MRI Companies.

      d. Defendant LEE GETSON was an owner of the MRI Companies, and routinely exerted direct control over various aspects of the operations of the MRI Companies that are relevant to this Information.

      e. CC-1, a co-conspirator not named herein, also was an owner of the MRI Companies, and, along with the defendant, routinely exerted direct control over various aspects of the operations of the MRI Companies that are relevant to this Information.

      f. MD-1 was a physician with a medical practice in New Jersey who accepted cash bribes from defendant LEE GETSON in exchange for referring patients requiring MRI services to the MRI Companies.

2.      From in and around January 2012 through in and around June 2014, in Ocean County, in the District of New Jersey and elsewhere, defendant

LEE GETSON

did knowingly and intentionally conspire with others to commit offenses against the United States, that is, to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, to a physician in order to induce referrals of patients to the MRI Companies for the furnishing and arranging of items and services, that is, the referral by a physician of patients requiring MRIs, for which payment was made in whole or in part under a Federal health care program, namely, Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

<u>Object of the Conspiracy</u>

3.      It was an object of the conspiracy for defendant LEE GETSON and others to obtain additional revenue for the MRI Companies, and in turn, for themselves and each other individually, by soliciting MD-1 for MRI referrals and paying MD-1 cash bribes for referrals of patients requiring MRI services, which the MRI Companies then would bill to obtain payment from various payors, including Medicare.

<u>Manner and Means of the Conspiracy</u>

4.      It was a part of the conspiracy that defendant LEE GETSON and others solicited MD-1 for MRI referrals and paid cash bribes of as much as tens

of thousands of dollars to MD-1 for referrals of MD-1's patients to the MRI Companies, where the patients would obtain MRI services.

Overt Acts

In furtherance of the conspiracy, and in order to effect the object thereof, defendant LEE GETSON and his co-conspirators committed or caused the commission of the following overt acts in the District of New Jersey and elsewhere:

5.     On or about February 10, 2014, CC-1 met MD-1 in New Jersey and paid MD-1 approximately $2,500 in cash for MD-1's referral of patients to the MRI Companies in late 2013.

6.     On or about June 19, 2014, defendant LEE GETSON and CC-1 met in person with MD-1 at MD-1's office in New Jersey and paid MD-1 approximately $2,500 in cash for MD-1's referral of patients to the MRI Companies in late 2013.

7.     Between January 2012 and June 2014, the MRI Companies received at least $115,000 as payment from Medicare for MRI services performed for patients who had been referred to the MRI Companies by MD-1 in exchange for cash bribes.  During this time, defendant LEE GETSON and his co-conspirators paid MD-1 more than $30,000.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

1.  As the result of committing the Federal health care offense as defined in 18 U.S.C. § 24 alleged in this Information, defendant LEE GETSON shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2)(A), including but not limited to, a forfeiture money judgment in the amount of $115,000, representing all property constituting or derived from gross proceeds traceable to the said conspiracy offense.

### Substitute Assets Provision

2.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)     cannot be located upon the exercise of due diligence;
    (b)     has been transferred or sold to, or deposited with, a third person;
    (c)     has been placed beyond the jurisdiction of the Court;
    (d)     has been substantially diminished in value; or
    (e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

PAUL J. FISHMAN
United States Attorney

CASE NUMBER: 15-

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

## LEE GETSON

# INFORMATION FOR

Title 18, United States Code, Section 371

**PAUL J. FISHMAN**
*UNITED STATES ATTORNEY, NEWARK, NEW JERSEY*

ANDREW D. LEVEN
JANE H. YOON
*ASSISTANT U.S. ATTORNEY*
*NEWARK, NEW JERSEY*
*(973) 645-2719*